### The State v. Primrose.

1. A person who removed to the territory of Louisiana after the treaty of Paris, in 1803, and before its admission into the Union as a State, and was an inhabitant thereof from the time of his removal until after the adoption of the State Constitution, and its admission into the Union, does not thereby become a citizen of the United States.

On points novel and difficult, from the Circuit Court of Mobile.

THE defendant was indicted in the Court below, for a libel, and pleaded in abatement, that one of the grand jurors, by whom the bill of indictment was found, was not a citizen of the United States, but was an alien, and a subject of the Queen

of Great Britain. Issue being taken on the plea, it appeared in evidence, that the juror was born in Ireland, and came to the United States, in the year one thousand eight hundred and nine, being then over the age of twenty-one, and came to Louisiana, in the year one thousand eight hundred and eleven, and remained there, until the year one thousand eight hundred and fourteen, at which time he came to Mobile, in the now State of Alabama, where he has lived ever since; and there being no proof that said juror had ever been naturalized, under any act of Congress, or in any other manner than as above stated, the Court directed the jury to find the issue for the State; but considering the question novel and difficut, reserved it for the revision of this Court.

ATTORNEY GENERAL, for the State.
CAMPBELL, contra.

ORMOND, J.—The question to be determined is, whether the fact, that a person was an inhabitant of the Territory of Louisiana, previous to its admission into the Union, by virtue of the act of Congress of the 20th February, 1811, will constitute such person a citizen of the United States. This act, which was to enable "the people of the Territory of Orleans to form a constitution and State government, and for the admission of such State into the Union, on an equal footing with the original States," authorizes the "*inhabitants*" of the Territory to form for themselves a constitution and State government, &c.

As the citizenship of the juror, is supposed to flow from his being an *inhabitant* of the Territory of Louisiana, at the time of the passage of the act of Congress of 1811, previously cited, it becomes necessary to consider the precise import of a term, from which such consequences are to arise. By the term, *inhabitant* of a place, or country, we understand one who has his domicil, or fixed residence there, in opposition to one who is a mere sojourner or temporarily resident in the place, or country: Bouviere's Law Dic. 504; 1 Dall. 480. It by no means however, follows, that an inhabitant is a subject or citizen; a foreigner, permanently resident, is as much an inhabitant, as if he were a citizen, or subject.

By the term, *inhabitants*, therefore, in this act, was merely meant the mass, constituting the body politic, who were authorized to form a State constitution, preparatory to admission into the Union. It certainly was not the intention of Congress, either in this, or in any of the other acts for the admission of new States into the Union, to do more than to prescribe the terms on which such State might be admitted. That it was not intended by the act, to confer citizenship, is conclusively shown by the 2d section of the act prescribing the qualifications of the voters for representatives to the convention, which was to form the State constitution. They were required to be, free white male citizens of the United States, having resided one year in the Territory, and paid taxes. Now, if the intention had been, that by the admission of the State into the Union, all the *inhabitants* became citizens of the United States, there would have been no propriety whatever, in confining the elective franchise to those who were *then* citizens.

The act for the admission of Louisiana into the Union, does not differ in any important particular from any of the other acts of Congress, passed for the same purpose, before and since. The act for the admission of Alabama into the Union, is precisely similar, and if the pretension set up, is well founded, as the juror was an inhabitant of Alabama, before, and at the time of its admission into the Union, there would be no necessity to resort to his residence in Louisiana, to establish his citizenship, unless the fact, that the Territory, constituting the State of Louisiana, was acquired by cession, since the formation of the Federal government, affects the question. But we apprehend, that the utmost which could be claimed for the residents of States thus circumstanced, would be, that they should be placed on the same footing with those residing in States, formed from the public domain, which belonged to the States at the formation of the Federal compact.

It is probable that the decision of the Court below, was made on the supposition, that the treaty of 1803, generally called the treaty of Paris, by which Louisiana was acquired, conferred citizenship on the juror. The 3d article of the treaty, provides, "that the inhabitants of the ceded Territory, shall be incorporated in the union of the United States, and admitted as soon as possible, according to the principles of the Federal con-

The State v. Primrose.

stitution, to the enjoyment of all the rights, advantages, and immunities of citizens of the United States; and in the mean time, they shall be maintained and protected in the free enjoyment of their liberty, property and the religion which they profess: 1 vol. Land Laws, U. S. 43.

There can be no doubt that all persons, who at the date of the treaty were "inhabitants" of the ceded territory, that is, who permanently resided there, were by the operation of the treaty itself, created citizens of the United States, and they are by the act of Congress of 1811, considered as citizens. But it is impossible to suppose that the French government, in making this stipulation on behalf of the inhabitants of the country they were ceding, or the United States, in acceding to it, intended to embrace those persons who might become inhabitants of the ceded Territory, at any after period.

We have been informed that a different decision has been made by the Courts of Louisiana from the conclusion here attained. We have not seen the report of the case, and do not know whether the facts are the same as in this case, or by what reasons the decision is fortified: it cannot therefore influence our judgment.

In our opinion, the Court erred in its charge to the jury, and its judgment is therefore reversed, and the cause remanded.